UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

JONATHON SMITH (#406067)                                        CIVIL ACTION

VERSUS

TIM DELANEY, ET AL.                                             NO. 14-0539-BAJ-RLB

## NOTICE

     Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

     In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

     ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

     Signed in Baton Rouge, Louisiana, on July 27, 2015.

                                    **RICHARD L. BOURGEOIS, JR.**
                                    **UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**JONATHON SMITH (#406067)**                                              **CIVIL ACTION**

**VERSUS**

**TIM DELANEY, ET AL.**                                                       **NO. 14-0539-BAJ-RLB**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the defendants' Motion to Dismiss (R. Doc. 11). This motion is opposed.

The *pro se* plaintiff, an inmate incarcerated at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against Tim Delaney and Ray Vittorio, complaining that the defendants violated his constitutional rights in September, 2013, when they allegedly failed to protect him from harm at the hands of a co-inmate. The plaintiff alleges that, as a result of the defendants' misconduct, he sustained serious injury when he was attacked by the offending co-inmate in March, 2014.

In the instant motion, the defendants first seek dismissal on jurisdictional grounds, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, of the plaintiff's claim asserted against them in their official capacities for monetary damages.[1] In this regard, the defendants are correct that § 1983 does not provide a federal forum for a litigant who seeks monetary damages against either a state or its officials acting in their official capacities,

---

[1]. It is unclear from the plaintiff's Complaint whether he is suing the defendants in their official and/or their individual capacities. The Court, however, interprets the pleadings of *pro se* petitioners liberally, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and to this end, the Court will interpret the plaintiff's Complaint as naming the defendants in both capacities.

specifically because these officials are not seen to be "persons" within the meaning of § 1983. *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989). In addition, in *Hafer v. Melo*, 502 U.S. 21 (1991), the United States Supreme Court addressed the distinction between official capacity and individual capacity lawsuits and made clear that a suit against a state official in an official capacity for monetary damages is treated as a suit against the state and is therefore barred by the Eleventh Amendment. *Id.* at 25. Accordingly, the plaintiff's claim asserted against the defendants in their official capacity for monetary damages is subject to dismissal. In contrast, the plaintiff's claim for monetary damages asserted against the defendants in their individual capacities remains viable because a claim against a state official in an individual capacity, seeking to impose personal liability for actions taken under color of state law, is not treated as a suit against the state. *Id.* at 29.

Turning to the plaintiff's claims that are not subject to dismissal on the basis of Eleventh Amendment immunity, the defendants next assert, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, that the plaintiff has failed to state a claim upon which relief may be granted. In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court clarified the standard of pleading that a plaintiff must meet in order to survive a motion to dismiss pursuant to Rule 12(b)(6). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, *supra*, 550 U.S. at 555. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, *supra*, 556 U.S. at 678, *quoting Bell Atlantic Corp. v. Twombly*, *supra*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* It follows that,

"where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679. "Where a Complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* at 678 (internal quotation marks omitted).

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the Complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Further, "[a] document filed *pro se* is 'to be liberally construed' ... and 'a *pro se* Complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (citation omitted). Notwithstanding, the court need not accept "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "naked assertions [of unlawful conduct] devoid of further factual enhancement." *Ashcroft v. Iqbal*, *supra*, 556 U.S. at 678 (internal quotation marks omitted).

In his Complaint, the plaintiff alleges that in September, 2013, he was moved to a cell at Camp C at LSP and was assigned to share the cell with a co-inmate. The plaintiff asserts that, at some point "later," he and the co-inmate had an "argument." The next day, the plaintiff spoke to defendant Ray Vittorio, who was making rounds on the plaintiff's cell tier, and informed defendant Vittorio that he "didn't feel safe in that cell." According to the plaintiff, defendant Vittorio responded that the plaintiff was required to spend an additional period of time at the assigned location in light of the specific rule infraction that had caused the plaintiff to be assigned there. The following day, the plaintiff allegedly spoke to defendant Tim Delaney, who was also making rounds on the cell tier, and requested a cell change. According to the plaintiff, defendant Delaney merely "walked off" without responding to the plaintiff's request. The

plaintiff provides no further allegations in the Complaint relative to defendants Vittorio and Delaney. Further, the plaintiff does not allege that there was any further dispute between himself and his cell-mate for a period of approximately four (4) months. In January, 2014, however, the plaintiff allegedly had another argument with the cell-mate. At that time, the plaintiff allegedly spoke with an inmate tier-walker, Jerome Smith, who was assigned to the plaintiff's housing unit, and requested that the tier-walker speak to the assigned tier security officers about a cell change. According to the plaintiff, the tier-walker returned and stated that the security officers had responded that they needed authorization from a superior officer before they could re-locate the plaintiff. According to the plaintiff, the tier-walker again returned approximately two hours later and reported that he had relayed the plaintiff's request for a cell change to a higher ranking officer, Capt. Terry Morgan (not named as a defendant herein), and Capt. Morgan had allegedly responded that he had been instructed not to move any inmates without authorization from his superiors. Finally, the plaintiff alleges that on March 11, 2014, his cell-mate punched him in the face and, during an ensuing fight, the co-inmate "bit a piece of [the plaintiff's] nose off."

In responding to the plaintiff's allegations, the defendants assert that they are entitled to qualified immunity in connection with the plaintiff's claims.[2] Specifically, the defendants contend that the plaintiff has failed to allege facts sufficient to support a "reasonable inference," greater than a "mere possibility," that they have participated in any violation of the plaintiff's constitutional rights. *See Ashcroft v. Iqbal*, *supra*, 556 U.S. at 678-79.

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks. *Huff v. Crites*, 473

---

2. The defendants also contend that the plaintiff has failed to exhaust administrative remedies in connection with his claims as mandated by 42 U.S.C. § 1997e. The Court need not address this contention, however, in light of the conclusion reached in this Report that the defendants are entitled to qualified immunity in connection with the plaintiff's claims.

Fed. Appx. 398 (5th Cir. 2012). As enunciated in *Saucier v. Katz*, 533 U.S. 194 (2001), the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendants' conduct violated the plaintiff's constitutional rights. *Id.* at 201. Second, the district court looks to whether the rights allegedly violated were clearly established at the time that the violation occurred. *Id.* This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition. *Id.* The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted. *Id.* at 202. The assertion of the qualified immunity defense alters the summary judgment burden of proof. *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005). Once a defendant pleads qualified immunity, the burden shifts to the plaintiff, who "must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct." *Gates v. Texas Department of Protective and Regulatory Services*, 537 F.3d 404, 419 (5th Cir. 2008), *citing Michalik v. Hermann, supra*, 422 F.3d at 262.[3]

Undertaking the qualified immunity analysis with respect to the plaintiff's claims, the Court finds that the defendants' motion is well-taken and should be granted. Specifically, the Court concludes that the plaintiff has failed to allege sufficient facts to state a viable claim against the defendants regarding the violation of his constitutional rights.

---

3. The United States Supreme Court has held that rigid chronological adherence to the *Saucier* two-step methodology is not mandatory. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Although the *Saucier* methodology will be "often beneficial", the Court in *Pearson* leaves to the lower courts discretion as to the order in which they may wish to address the two prongs of the qualified immunity analysis. *Id.*

Under the Eighth Amendment to the United States Constitution, a prisoner has a constitutional right to be sheltered from the threat of harm or violence at the hands of other inmates. *Johnston v. Lucas*, 786 F.2d 1254, 1259 (5th Cir. 1986); *Jones v. Diamond*, 636 F.2d 1364, 1373 (5th Cir. 1981). Specifically, prison officials "have a duty ... to protect prisoners from violence at the hands of other inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). In order for there to be liability in connection with this cause of action, however, there must have existed an intent on the part of security officers to cause the plaintiff harm or at least a conscious or callous indifference to the plaintiff's right to be protected from such harm. *Johnston v. Lucas, supra*, 786 F.2d at 1259. "Deliberate indifference" is the appropriate standard to be applied in this context, and this term has been defined as including an element of "subjective recklessness" as used in the criminal law. *Farmer v. Brennan, supra*, 511 U.S. at 837 ("the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference"). The deliberate indifference standard sets a very high bar, and a claim of mere negligence in failing to protect an inmate from harm is not actionable under § 1983. *See Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986).

Applying the foregoing standard, the Court concludes that the plaintiff has failed to allege facts sufficient to support a claim that either defendant was deliberately indifferent to a substantial risk of serious harm in failing to protect the plaintiff from the co-inmate. Specifically, all that the plaintiff has alleged relative to the defendants is that he spoke to each defendant on a single occasion in September, 2013, after a verbal argument between the plaintiff and his cell-mate, and requested a cell change. Whereas the plaintiff asserts that he stated to defendant Vittorio at that time that he "didn't feel safe" in his assigned cell, the plaintiff makes no allegation that he informed defendant Vittorio of the referenced verbal argument, that he requested protective custody, that he asked to have the cell-mate placed on the plaintiff's "enemy

list," or that he provided any information to support the request for a cell change or to justify his feelings of insecurity. There is thus no factual basis for concluding that defendant Vittorio was personally aware that the plaintiff faced a substantial risk of serious harm on the referenced date and consciously chose to ignore that risk. In fact, it appears from the plaintiff's allegations that defendant Vittorio may have interpreted the plaintiff's request for a cell change as merely a request for a transfer to a different housing location. Specifically, the plaintiff alleges in the Complaint that, in response to the plaintiff's request, defendant Vittorio,

> asked me why was I in the cell blocks. I told him a Rule # 21 [violation, *i.e.*, an aggravated sex offense]. He then told me I had to give him a year on a Rule # 21 violation before he consider moving me anywhere.

R. Doc. 1 at p. 4. Further, with regard to defendant Tim Delaney, the plaintiff alleges only that, the day after speaking with defendant Vittorio, the plaintiff requested a cell change from defendant Delaney, and the defendant "walked off" without responding. As to this defendant, therefore, the plaintiff does not even allege that the defendant had notice that the plaintiff didn't feel safe in his assigned cell, much less any information that might have alerted the defendant to a risk of harm.

According to the allegations in the Complaint, the plaintiff did not thereafter make any further request to either defendant for a cell change, did not formally seek protective custody, and did not file an administrative grievance relative to the defendants' alleged wrongful conduct. Instead, the plaintiff lived in the assigned cell with the co-inmate for a period of approximately four (4) months without any apparent conflict, and when there did allegedly occur another incidence of verbal dispute between the two inmates in January, 2014, the plaintiff complained only to a co-inmate tier-walker, who then allegedly relayed the plaintiff's complaint to security officers assigned to the plaintiff's tier but not to either defendant. The plaintiff does not allege,

therefore, that any information was provided to either defendant at that time that would have placed the defendants on notice of potential danger.  Finally, the plaintiff then continued to live in the cell with the co-inmate for an additional period of two months, again without notice to either defendant, verbally or in writing, of any potential danger before the fight occurred on March 11, 2014, that forms the basis for this cause of action.  Based on these allegations, there is no basis for finding that either defendant was subjectively deliberately indifferent to the plaintiff's safety or well-being.  To the contrary, the plaintiff's allegations suggest, at most and purely in hindsight, that the defendants may have been negligent in failing to respond to the plaintiff's request for a cell change on a single occasion in September, 2013, six months before the ensuing physical altercation.  As previously noted, however, mere negligence is not a basis for liability under 42 U.S.C. § 1983.  *Davidson v. Cannon, supra*, 474 U.S. at 347-48.  Accordingly, the Court finds that the plaintiff has failed to state a claim upon which relief may be granted relative to the conduct of the defendants, and the defendants are therefore entitled to judgment as a matter of law.

Finally, to the extent that the plaintiff's allegations may be interpreted as seeking to invoke the supplemental jurisdiction of this court over potential state law claims, a district court may decline the exercise of supplemental jurisdiction if a plaintiff's state law claims raise novel or complex issues of state law, if the claims substantially predominate over the claims over which the district court has original jurisdiction, if the district court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons.  28 U.S.C. § 1367.  In the instant case, having considered the allegations of the plaintiff's Complaint and having recommended that the plaintiff's federal claims be dismissed, the Court further recommends that the exercise of supplemental jurisdiction be declined.

## RECOMMENDATION

It is recommended that the Court decline the exercise of supplemental jurisdiction in connection with the plaintiff's potential state law claims. It is further recommended that the defendants' Motion to Dismiss (R. Doc. 11) be granted, dismissing the plaintiff's claims, with prejudice, and that this action be dismissed.

Signed in Baton Rouge, Louisiana, on July 27, 2015.

RICHARD L. BOURGEOIS, JR.
UNITED STATES MAGISTRATE JUDGE